IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CV-370-D

| | | |
|---|---|---|
| RECO D. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| HEALTHCARE FINANCIAL SERVICES and CAMC PHYSICIANS GROUP, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

On July 21, 2017, Reco D. Smith ("Smith" or "plaintiff"), a federal prisoner proceeding pro se and currently detained at the Federal Medical Center in Butner, North Carolina, filed a complaint against Healthcare Financial Services ("HCFS") and CAMC Physicians Group ("CAMC"). Compl. [D.E. 1]; see [D.E. 1-3]; [D.E. 20] 3. Smith alleged violations of the Fair Debt Collection Practices Act and the Fair Credit Reporting Act, and state-law claims under the North Carolina Debt Collection Act and for negligence. See Compl. at 8–12. On October 20, 2017, defendant CAMC moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(2) [D.E. 15], and defendant HCFS moved to dismiss the action under Federal Rules of Civil Procedure 12(b)(4), (5), and (6) [D.E. 17]. On November 14, 2017, Smith responded in opposition to both motions [D.E. 20]. As explained below, the court grants CAMC's motion to dismiss, denies HCFS's motion to dismiss, and transfers this action to the United States District Court for the Southern District of West Virginia.

I.

Smith is a prisoner at the Federal Medical Center in Butner, North Carolina. Compl. ¶ 4; [D.E. 20] 3. HCFS is a debt collection agency with its principal place of business in Knoxville, Tennessee. See id. ¶ 5. CAMC is a medical provider headquartered in Charleston, West Virginia.

See id. ¶ 6. Smith alleges that CAMC and HCFS engaged in unfair and deceptive trade practices while trying to collect a $302.00 debt, which Smith alleges is not properly attributable to him. See id. ¶¶ 10, 12, 35. Smith became aware of the $302.00 debt when it appeared on his Transunion credit report, which indicated that he owed the debt to "Healthcare Fincl Svcs" and listed a post office box in Charleston, West Virginia as HCFS's address. See id. ¶ 12; [D.E. 1-1]. Defendant CAMC is the original creditor for this debt. See [D.E. 1-1]. CAMC contends that Smith incurred this debt for medical services while a prisoner at the Gilmer Federal Correction Center in Glenville, West Virginia. See [D.E. 16] 7; Crotty Dec. [D.E. 16-1] ¶ 13. Smith contends that CAMC sold this debt to HCFS for collection and that each organization violated federal and state law in attempting to collect the debt. See Compl. ¶¶ 6, 10–19.

CAMC moves to dismiss the action for lack of personal jurisdiction. See [D.E. 15–16]; Fed. R. Civ. P. 12(b)(2). In support, CAMC states that it is a "nonprofit corporation organized and existing under the laws of the State of West Virginia," which operates exclusively within West Virginia, and does not do business, employ workers, or supply services within North Carolina. [D.E. 16-1] ¶¶ 2, 5–6.

A plaintiff must prove personal jurisdiction by a preponderance of the evidence. See Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir. 2016); Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). If a court rules on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff need only establish a prima facie case. Combs, 886 F.2d at 676. When determining whether the plaintiff has met this burden, courts resolve all factual disputes and draw all reasonable inferences in the light most favorable to the plaintiff. Id.; see Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). However, an evidentiary hearing need not include live testimony, but merely the opportunity for the parties to present evidence and argument concerning jurisdiction. Grayson, 816 F.3d at 268. After the court has considered such evidence and argument, it determines whether a plaintiff has proven by a preponderance of the evidence that the court has

personal jurisdiction over the defendant. Id.

A federal court may exercise personal jurisdiction over a person to the extent allowed by state law in the state where the federal court sits. See Fed. R. Civ. P. 4(e)(1), (h)(1)(A), (k)(1)(A). The North Carolina long-arm statute extends personal jurisdiction over out-of-state defendants to the fullest limits permitted by the Fourteenth Amendment's Due Process Clause. See Dillon v. Numismatic Funding Corp., 291 N.C. 674, 676, 231 S.E.2d 629, 630–31 (1977); Century Data Sys., Inc. v. McDonald, 109 N.C. App. 425, 427, 428 S.E.2d 190, 191 (1993). To determine whether the North Carolina long-arm statute reaches a particular defendant, courts analyze whether the defendant has sufficient minimum contacts with North Carolina such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quotation omitted); see Dillon, 291 N.C. at 676–80, 231 S.E.2d at 630–33.

Courts recognize two types of personal jurisdiction: general and specific. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). Smith does not argue that the court has general jurisdiction over CAMC. See [D.E. 20] 4. When assessing specific jurisdiction, courts consider three factors: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the [forum] state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 397 (4th Cir. 2003); see Bristol-Myers Squibb Co. v. Superior Court of Cal., 137 S. Ct. 1773, 1780–81 (2017); Walden v. Fiore, 134 S. Ct. 1115, 1121–22 (2014); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474–77 (1985). When analyzing the first two elements, courts consider only the defendant's activities—those contacts that the defendant itself has created with the forum. See Bristol-Myers Squibb Co., 137 S. Ct. at 1781–82; Walden, 134 S. Ct. at 1122; Burger King, 471 U.S. at 472–78. In accordance with this principle, "[t]he substantial connection between the defendant and the forum State necessary for a finding of minimum contacts must come about by an

3

action of the defendant purposefully directed toward the forum State." Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 112 (1987) (plurality opinion) (citations and emphasis omitted); see Bristol-Myers Squibb Co., 137 S. Ct. at 1781–82; Walden, 134 S. Ct. at 1122.

Smith argues that CAMC targeted the conduct alleged in the complaint at him while he resided in North Carolina. See [D.E. 20] 4. Thus, according to Smith, CAMC has sufficient contacts with North Carolina for the court to exercise personal jurisdiction. See id.

CAMC's alleged conduct does not suffice for this court to exercise personal jurisdiction over CAMC. The only contact Smith alleges between CAMC and North Carolina is the contact that Smith made with CAMC when Smith began to reside in North Carolina. Nothing in the complaint suggests that CAMC purposefully directed actions towards North Carolina, and CAMC's alleged conduct would not cause CAMC to "reasonably anticipate being haled into court" in North Carolina. See, e.g., Calder v. Jones, 465 U.S. 783, 790 (1984). Accordingly, exercising personal jurisdiction over CAMC would violate due process. See, e.g., Bristol-Myers Squibb Co., 137 S. Ct. at 1781–82; Walden, 134 S. Ct. at 1122–26; World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980); Hanson v. Denckla, 357 U.S. 235, 251–52 (1958). Thus, this court lacks personal jurisdiction over CAMC and grants CAMC's motion to dismiss.

II.

Defendant HCFS moves to quash service of process, or alternatively, to dismiss the complaint based on Federal Rules of Civil Procedure 12(b)(4), (5), and (6). See [D.E. 17]. HCFS argues that it is the wrong defendant, and that another organization with a similar name, but which is based in West Virginia and not Tennessee, is the organization that Smith should have sued. In support of its motion to quash, HCFS cites the address listed on Smith's original Transunion credit report and a registered mail receipt both of which list a Charleston, West Virginia address. See [D.E. 18] ¶¶ 2–6. A motion to quash or dismiss under Rule 12(b)(4) challenges the sufficiency or "form" of the process itself, while a motion to quash or dismiss under Rule 12(b)(5) challenges the

4

sufficiency of the act of "service" of process. See Fed. R. Civ. P. 12(b)(4), (b)(5); Lee v. City of Fayetteville, No. 5:15-CV-638-FL, 2016 WL 1266597, at *2 (E.D.N.C. Mar. 30, 2016) (unpublished). In other words, a Rule 12(b)(4) motion to dismiss objects to a defect in the content of the documents served, while a Rule 12(b)(5) motion to dismiss objects to a defect in the act (or lack) of delivery. See, e.g., 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (3d ed. 2004). A typical Rule 12(b)(4) challenge alleges that the entity named in the summons is different from the entity named in the complaint, and a typical Rule 12(b)(5) challenge alleges that the process was delivered by a person incapable of serving process (e.g., a party), to a person or entity incapable of receiving service (e.g., a minor), or that the service was delivered in an improper way (e.g., via first-class mail). See Stokes v. JPMorgan Chase Bank, NA, No. JFM 8:11-cv-2620, 2012 WL 527600, at *5–6 (D. Md. Feb. 16, 2012) (unpublished). Plaintiff bears the burden of establishing proper service of process. See Mylan Labs., 2 F.3d at 60; Dalenko v. Stephens, 917 F. Supp. 2d 535, 542 (E.D.N.C. 2013).

HCFS alleges that the conduct described in Smith's complaint is properly ascribed to a different entity with a similar name, but which is based in West Virginia and not in Tennessee. Under Rule 12(b)(4), HCFS argues that Smith named the wrong party in the complaint and summons. See [D.E. 18] 4–6. Under Rule 12(b)(5), HCFS argues that the service was improper because Smith failed to satisfy either Rule 4(h)(1)(B) or Rule 4(h)(1)(A), incorporating the Tennessee state law governing service on a domestic corporation. See [D.E. 18] 4. Specifically, HCFS argues that both rules require the delivery of a summons and a copy of the complaint to a corporate officer who is authorized to receive process. See Fed. R. Civ. P. 4(h); Tenn. R. Civ. P. 4.04. HCFS argues that service was improper because service was made to an agent of the Tennessee HCFS, not the West Virginia HCFS. See [D.E. 18] 4–6.

HCFS's misconstrues Rule 12(b)(4) and (5). Under Rules 12(b)(4) and (5), "wrong" does not mean "not liable." Instead, it means "a party not named in the summons." See 5B Charles Alan

5

Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (3d ed. 2004). The Tennessee entity named HCFS, with its principal place of business at 265 Brookview Centre Way, Suite 400, Knoxville, TN 37919, is named as a defendant in the complaint, and in the summons, copies of which were delivered in a manner prescribed under the rules. See Compl. 1–2; [D.E. 1-4] 1; Affidavit of Service [D.E. 14]. HCFS's factual claim that it is not liable to Smith is not properly expressed via a Rule 12(b)(4) or 12(b)(5) motion to quash or dismiss. Accordingly, the court denies HCFS's motion to quash or dismiss under Rule 12(b)(4) or 12(b)(5).

HCFS also moves to dismiss the complaint under Rule 12(b)(6). HCFS argues that Smith has failed to state a claim upon which relief can be granted because "if anyone engaged in [the allegedly wrongful conduct] at all, it was a West Virginia corporation [and not this entity]." [D.E. 18] 8.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80, 684 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013) abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–80. Rather, a plaintiff's allegations must "nudge[] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausib[ility]." Iqbal, 556 U.S. at 678–79.

The standard used to evaluate the sufficiency of a pleading is flexible, "and a pro se

complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (emphasis and quotation omitted). Erickson, however, does not "undermine [the] requirement that a pleading contain 'more than labels and conclusions.'" Giarratano, 521 F.3d at 304 n.5 (quoting Twombly, 550 U.S. at 555); see Iqbal, 556 U.S. at 677–83; Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255–56 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

Although a court must liberally construe a pro se plaintiff's allegations, it "cannot ignore a clear failure to allege facts" that set forth a cognizable claim. Johnson v. BAC Home Loans Servicing, LP, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011); see Giarratano, 521 F.3d at 304 n.5. "The 'special judicial solicitude' with which a district court should view . . . pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed." Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990). Every party—pro se or otherwise—must comply with the Federal Rules of Civil Procedure. See Iqbal, 556 U.S. at 678–69; Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984) (per curiam).

Construing Smith's non-conclusory allegations in the light most favorable to him, Smith plausibly alleges that the Tennessee HCFS named in the complaint is liable. Whether Smith will be able to prove such liability, and whether the Tennessee HCFS named in the complaint and the West Virginia HCFS identified in the Transunion credit report are the same entity, related entities, or completely separate entities are factual questions for another day, and do not concern the legal sufficiency of Smith's complaint. Thus, the court denies HCFS's motion to dismiss.

### III.

A court need not have personal jurisdiction over a defendant to transfer a case pursuant to 28 U.S.C. §§ 1404(a) or 1406(a). See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962); O'Neal

v. Hicks Brokerage Co., 537 F.2d 1266, 1268 (4th Cir. 1976); Taylor v. City and Cty. Of Honolulu, No. 7:16-CV-410-D, 2017 WL 3526660, at *4 (E.D.N.C. Aug. 16, 2017) (unpublished). Questions regarding transfer under section 1404(a) are committed to the sound discretion of the district court. See, e.g., Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Brock v. Entre Comput. Ctrs., Inc., 933 F.2d 1253, 1257 (4th Cir. 1991). Under 28 U.S.C. § 1404(a), a district court may transfer a case for the convenience of the parties and witnesses, in the interest of justice, to any other district where the action might have been brought, or to any district to which all parties consent. Additionally, a district court may dismiss an action, or if it is in the interest of justice, transfer an action if venue is improper in the transferor court. See 28 U.S.C. § 1406(a). Even if venue is proper in the transferor court, a court may transfer an action under section 1406(a) for any reason that otherwise impedes a decision on the merits. See, e.g., Porter v. Groat, 840 F.2d 255, 257–58 (4th Cir. 1988); Jenkins v. Albuquerque Lonestar Freightliner, LLC, 464 F. Supp. 2d 491, 494 (E.D.N.C. 2006). Venue is proper in a district if "a substantial part of the events or omissions giving rise to the claim occurred" in that district. 28 U.S.C. § 1391(b)(2).

Having determined that the court lacks personal jurisdiction over CAMC, the court must decide whether to transfer this action to the United States District Court for the Southern District of West Virginia "in the interest of justice." 28 U.S.C. § 1404(a); see Szulik v. TAG Virgin Islands, Inc., 858 F. Supp. 2d 532, 547–48 (E.D.N.C. 2012); Dacar v. Saybolt LP, No. 7:10-CV-12-F, 2011 WL 223877, at *2 (E.D.N.C. Jan. 24, 2011) (unpublished); Blue Mako, Inc. v. Minidis, 472 F. Supp. 2d 690, 703 (M.D.N.C. 2007). When deciding whether to transfer venue, a district court must consider: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." Tr. of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 444 (4th Cir. 2015).[1] In

---

[1] Courts in this district have described the test in terms of eleven more specific factors rather than four more general factors, but the analysis remains essentially the same. See Szulik, 858 F.

balancing these factors, a district court has substantial discretion to decide whether to transfer venue. See Stewart Org., 487 U.S. at 29; Brock, 933 F.2d at 1257; Jenkins, 464 F. Supp. 2d at 493.

As for the first factor, plaintiff's choice of forum, Smith filed this action in the Eastern District of North Carolina. Thus, this factor does not weigh in favor of transfer.

As for the second factor, the convenience of the witnesses and the ease of access to evidence, Smith is located in the Eastern District of North Carolina, while defendants are located in the Southern District of West Virginia and in Tennessee. This court lacks personal jurisdiction over CAMC, and the allegedly wrongful conduct took place in the Southern District of West Virginia. Furthermore, the Southern District of West Virginia is better equipped than this court to evaluate whether the Tennessee defendant is related to the West Virginia entity with a similar name. Thus, this second factor weighs in favor of transfer.

As for the third factor, the convenience of the parties, Smith resides in the Eastern District of North Carolina but resided in West Virginia when the conduct in question occurred. Defendant CAMC resides in the Southern District of West Virginia. Defendant HCFS resides in Tennessee, although if its assertions are credited, the actual party in interest resides in the Southern District of West Virginia. Thus, this third factor weighs in favor of transfer.

As for the fourth factor, the interests of justice, this factor implicates many considerations. One such consideration is the particular interest a forum may have in deciding a case. This court has an interest in deciding cases brought under North Carolina law, while the Southern District of West Virginia has a particular interest in deciding cases involving West Virginia defendants and conduct which allegedly occurred in West Virginia. Thus, this fourth factor weighs in favor of transfer. Having reviewed the record and the interests of justice, the court will transfer this action to the Southern District of West Virginia.

---

Supp. 2d at 548; Dacar, 2011 WL 223877, at *3; Charles v. Bradley, No. 5:08-CV-124-F, 2009 WL 1076771, at *2 (E.D.N.C. Apr. 21, 2009) (unpublished).

IV.

In sum, defendant CAMC's motion to dismiss for lack of personal jurisdiction [D.E. 15] is GRANTED. Defendant HCFS's motion to quash and in the alternative to dismiss [D.E. 17] is DENIED. This action is TRANSFERRED to the United States District Court for the Southern District of West Virginia.

SO ORDERED. This 12 day of January 2018.

JAMES C. DEVER III
Chief United States District Judge